1   Jeffrey J. Angelovich (admitted *Pro Hac Vice*)
    Bradley E. Beckworth (admitted *Pro Hac Vice*)
2   Susan Whatley (admitted *Pro Hac Vice*)
    NIX, PATTERSON & ROACH, L.L.P.
3   205 Linda Drive
    Daingerfield, Texas 75638
4   Telephone:  903-645-7333
    Facsimile:  903-645-4415
5   JAngelovich@nixlawfirm.com
    BBeckworth@nixlawfirm.com
6   SusanWhatley@nixlawfirm.com

7   Sean Rommel (admitted *Pro Hac Vice*)
    PATTON ROBERTS, PLLC
8   Century Bank Plaza
    2900 St. Michael Drive, Suite 400
9   Texarkana, TX 75505-6128
    Telephone:  903-334-7000
10  Facsimile:  903-330-7007
    srommel@pattonroberts.com
11

12  Co-Class Counsel

Laurence D. King (State Bar No. 206423)
Linda M. Fong (State Bar No. 124232)
KAPLAN FOX & KILSHEIMER LLP
555 Montgomery Street, Suite 1501
San Francisco, CA 94111
Telephone:  415-772-4700
Facsimile:  415-772-4707
LKing@KaplanFox.com
LFong@KaplanFox.com

Liaison Counsel

Sean M. Handler (admitted *Pro Hac Vice*)
John A. Kehoe
BARROWAY TOPAZ KESSLER MELTZER
& CHECK LLP
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile: 620-677-7056
shandler@sbtklaw.com
jkehoe@sbtklaw.com

Additional Counsel for Erie

Additional Counsel listed on last page

15              UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                 SAN FRANCISCO DIVISION

18

| | |
|---|---|
| 19 **In re: BROCADE SECURITIES LITIGATION** | Consolidated Case No.:  3:05-CV-02042-CRB |
| 20 | **CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION** |
| 21 | |
| 22 | |
| 23 | |
| 24 | Date:   January 23, 2009 |
| 25 | Time:  10:00 a.m. Dept.: Courtroom 8, 19th Floor |
| 26 | Judge: Hon. Charles R. Breyer |

1

# TABLE OF CONTENTS

2   TABLE OF AUTHORITIES .................................................................................................. iii

3   NOTICE OF MOTION AND MOTION.......................................................................... 1

4   STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))................................. 3

5   MEMORANDUM OF POINTS AND AUTHORITIES........................................................ 4

6   I.    PRELIMINARY STATEMENT ............................................................................... 4

7   II.   BACKGROUND OF THE ACTION........................................................................ 7

8   III.  THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE,
        AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT.................. 8

9
        A.    The Ninth Circuit Favors Class Action Settlements........................................... 8
10
        B.    Judge Phillips and Judge Renfrew Believe That the Settlements
11            Are Fair, Reasonable and Adequate.................................................................. 8

12      C.    Class Representatives—Who Were Directly Involved in the
              Litigation and Settlement Process—Approve of and Support
13            The Settlements ............................................................................................... 9

14      D.    The Ninth Circuit's Standards for Final Approval of a
              Class Action Settlement ...................................................................................10
15
        E.    The Settlements Satisfy the Ninth Circuit's Standards for
16            Final Approval of a Class Action Settlement ....................................................11

17            1.    The Strength of Class Representatives' Case and
                    the Risk, Expense, Complexity and Likely Duration
18                  of Further Litigation Supports the Settlements ................................11

19            2.    The Risk of Maintaining Class Action Status
20                  Throughout the Trial Supports the Settlements................................14

21            3.    The Amount of the Recovery Supports the Settlements....................14

22            4.    The Extent of Discovery Completed and the Stage
                    of the Proceedings Support the Settlements......................................16
23
              5.    The Experience and Views of Counsel Supports
24                  the Settlements................................................................................17

25            6.    The Presence of a Governmental Participant ....................................18

26            7.    The Overwhelmingly Positive Reaction of
                    Class Members Supports the Settlements.........................................19

27

28   CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

i

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE..............................20

V.    CONCLUSION......................................................................................................21

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

ii

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (N.D. Cal. 1979) ................................................................. 17

4

*Churchill Vill., L.L.C. v. GE,*
361 F.3d 566 (9th Cir. 2004) ......................................................................... 20

5

*Class Plaintiffs v. Seattle,*
955 F.2d 1268 (9th Cir. 1992) ....................................................................... 20

6

7

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) ....................................................................................... 13

8

*Glass v. UBS Fin. Serv., Inc.,*
No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .................. 14, 15

9

10

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ....................................................................... 10

11

*In re Heritage Bond Litig.,*
 MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ....... passim

12

13

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000) .................................................................. 14, 15, 16

14

*In re Omnivision Tech., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................... 17

15

16

*In re Oracle Sec. Litig.,*
No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994) ........... 20, 21

17

*Jaffe v. Morgan Stanley & Co.,*
No. C-06-3903, 2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008) ................... 9

18

19

*Linney v. Cellular Alaska P'ship,*
151 F.3d 1234 (9th Cir. 1998) .................................................................. 10, 14

20

*Marshall v. Holiday Magic, Inc.,*
550 F.2d 1173 (9th Cir. 1977) ....................................................................... 19

21

22

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.,*
 221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... passim

23

*Officers for Justice v. Civil Service Comm'n.,*
688 F.2d 615 (9th Cir. 1982) .......................................................... 8, 10, 11, 15

24

25

26

*Rodriguez v. West Publ. Corp.,*
No. CV05-3222, 2007 U.S. Dist. LEXIS 74767 (C.D. Cal. Sept. 10, 2007) ................ 20

27

28

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ........................................................................ 10

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .......................................................................... 10

**RULES**

Fed. R. Civ. P. 23.................................................................................... 10, 14

**OTHER AUTHORITIES**

Moore's Federal Practice (Matthew Bender 3d ed.) ................................... 10, 11

Manual for Complex Litigation (Third) (1995) ................................... 8

Newberg & Conte, Newberg on Class Actions (3d ed. 1992).................................. 8

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

iv

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 23, 2009 at 10:00 a.m., before the Honorable Charles R. Breyer, District Court Judge, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Lead Plaintiff and Class Representative, the Arkansas Public Employees Retirement System ("APERS"), and Class Representative, Erie County Pennsylvania Public Employees Retirement System ("ERIE") (collectively, "Class Representatives"),[1] on behalf of themselves and others similarly situated, including the class previously certified by the Court, will, and hereby do, move pursuant to Rule 23 of the Federal Rules of Civil Procedure for (i) final approval of the proposed settlements with the Settling Defendants,[2] and (ii) final approval of the proposed plan of allocation.[3]   Class Representatives' Motion is based on this Memorandum of Points and Authorities; the Declaration of Jeffrey J. Angelovich in Support of Proposed Class Action Settlement and Application For an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Angelovich Declaration"); the Declaration of Gail Stone (on behalf of APERS) filed with the Court on January 5, 2009 (Docket No. 477) (the "Stone Declaration"); the Declaration of Sue Weber (on behalf of ERIE) filed with the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Stipulation and Agreement of Settlement with Brocade and the Individual Defendants and the Stipulation and Agreement of Settlement Among Class Representatives and KPMG LLP filed with the Court on October 24, 2008.  *See* Docket Nos. 470 & 471.

[2] The Settling Defendants are Brocade Communications Systems, Inc. (hereafter "Brocade" or the "Company") and KPMG, LLP ("KPMG").

[3] In its Preliminary Approval of Settlement Agreement (the "Preliminary Approval Order") (Docket No. 475), this Court certified for purposes of effectuating the KPMG settlement, a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) that is identical to the Class previously certified by this Court against Brocade and the Individual Defendants.  In so doing, the Court found that the KPMG settlement class meets all the requirements for class certification and that the numerosity, commonality, typicality, and fairness requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied. No Class Members objected to the Court's certification of the KPMG settlement class after receiving the Notice.  Accordingly, no further action by the Court as to the certification of the KPMG settlement class is necessary.

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

1

1  Court on January 7, 2009 (Docket No. 479) (the "Weber Declaration"); the Joint Declaration of Layn

2  R. Phillips and Charles B. Renfrew filed with the Court on January 5, 2009 (Docket No. 478) (the

3  "Phillips and Renfrew Declaration"); the Declaration of Aaron Waugh Regarding Mailing of Notice

4  and Proof of Claim, filed concurrently herewith (the "Waugh Declaration"); the Stipulation and

5  Agreement of Settlement with Brocade and the Individual Defendants filed with the Court on

6  October 24, 2008 (Docket No. 471), as modified by the Parties pursuant to the Court's Preliminary

7  Approval Order of November 18, 2008; the Stipulation and Agreement of Settlement Among Class

8  Representatives and KPMG LLP filed with the Court on October 24, 2008 (Docket No. 470); all

9  other pleadings and matters of record; and such additional evidence or argument as may be presented

10  at the hearing.

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

2

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

1.      Whether the Court should grant final approval of the proposed settlement of $160,000,000.00 with Brocade;

2.      Whether the Court should grant final approval of the proposed settlement with KPMG, whereby KPMG will reimburse Class Representatives and the Class in an amount not to exceed $98,500.00 for reasonable costs incurred in the administration of the proposed settlements;

3.      Whether the Court should grant final approval of the proposed plan of allocation;

4.      Whether the Court should order the consummation of the proposed settlements subject to their terms; and

5.      Whether the Court should grant such other and further relief to which the Court believes Class Representatives are entitled.

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

3

1             **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.      PRELIMINARY STATEMENT**

3        On November 18, 2008, this Court granted preliminary approval of two extraordinary

4 settlements obtained by Class Representatives, namely: (1) a $160,000,000.00 settlement with

5 Defendant Brocade, whereby the Class will release its claims against Defendants Brocade, Greg

6 Reyes, Antonio Canova, Larry Sonsini, Seth Neiman and Neal Dempsey; and (2) a settlement with

7 Defendant KPMG, a defendant previously dismissed by the Court, whereby the Class will release its

8 claims against Defendant KPMG in exchange for payment  in an amount not to exceed $98,500.00

9 as reimbursement to the Class for reasonable costs incurred in the administration of the two

10 settlements.[4]  The Settlements are remarkable for a number of reasons.  Class Counsel[5] and Class

11 Representatives secured the Settlements in the absence of insurance proceeds and in the face of

12 serious obstacles to proving loss causation and damages.  The Settlements rank among the most

13 substantial—if not the most substantial—securities fraud class action settlements in history in terms

14 of the percentage of alleged damages recovered.  Indeed, the recovery constitutes between 60 and

15 100% of the Class' alleged damages (60-70% under Class Representatives' damages theory and 80-

16 100% under Defendants' damages theory).  *See* Angelovich Decl. at ¶5.  In terms of total dollar

17 amounts, the Settlements also were the largest such recovery in any options backdating case at the

18 time they were achieved (and remain the second largest in an options backdating case), and rank as

19 the fourth largest settlement ever in the Ninth Circuit.  *Id.*

20

21

22

23

24 [4] The two settlements are referred to herein collectively as the "Settlements."

25 [5] The term "Class Counsel" shall refer to court-appointed lead counsel, Nix Patterson & Roach,
26 L.L.P. and Patton Roberts, PLLC.  Class Counsel was assisted in this litigation by the following
firms:  Keil & Goodson, PA; Barroway, Topaz, Kessler, Meltzer & Check LLP; and Court-appointed
Liaison Counsel Kaplan, Fox & Kilsheimer, LLP.

27

28 CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

1    Even more remarkably, not a single Class Member objected to the Settlements,[6] and only

2    four Class Members filed complete and timely requests for exclusion.[7]  This overwhelmingly

3    positive, virtually unanimous approval speaks volumes as to the fairness, adequacy and

4    reasonableness of these two incredible Settlements achieved by Class Representatives.

5        In granting preliminary approval of these remarkable Settlements, the Court entered the

6    Preliminary Approval of Settlement Agreement (the "Preliminary Approval Order") (Docket No.

7    475), in which the Court:

8        a.      Preliminarily certified, for purposes of effectuating the KPMG Settlement, a class

9    pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), as further defined in the Preliminary

10   Approval Order, found that such settlement class satisfies all the requirements of Federal Rule of

11   Civil Procedure 23(a) and (b)(3), and appointed APERS and ERIE as class representatives and Nix

12   Patterson & Roach, LLP and Patton Roberts, PLLC as class counsel;

13       b.      Appointed Epiq Systems Inc. ("Epiq") as Claims Administrator to supervise and

14   administer the notice and claims procedures in connection with the Settlement;

15       c.      Preliminarily approved (i) the Settlement of the Action as set forth in the Stipulations,

16   and (ii) the proposed Plan of Allocation described in the Notice;

17       d.      Approved the content of the Notice and Proof of Claim and Release Form for the

18   Settlement Class and the proposed manner of notifying the Class of the Settlements;

19

20   [6] While no Class Members objected to the Settlements, former defendant Michael Byrd filed an

21   objection on January 9, 2009 (Docket No. 480).  On January 12, 2009, three (3) days past the objection deadline, Mark Leslie, a former Brocade director, joined in Byrd's objection. At the time of

22   filing this Motion, Class Counsel has been informed that Mr. Byrd and Mr. Leslie intend to withdraw their objections.  If not, Class Representatives reserve their right to respond separately.

23   [7] Significantly, all four of the Class Members who filed complete requests for exclusion sold their

24   shares of Brocade common prior to the first disclosure of Brocade's fraud on January 6, 2005. Accordingly, none of these Class Members possessed a Recognized Claim.  *See* Waugh Decl. at ¶ 19

25   & Exh. 6.  Five additional potential Class Members purported to file requests for exclusion, but failed to provide all of the information requested by the Notice.  *Id.*

26

27

28   CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
     (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
     3:05-CV-02042-CRB

e.      Directed Class Representatives to begin the Notice process immediately; and

f.      Set a Fairness Hearing pursuant to Federal Rule of Civil Procedure 23(e) on January 23, 2009, at 10:00 a.m., in the United States District Court for the Northern District of California, San Francisco Division.

All requirements of the Preliminary Approval Order have been satisfied.  As directed by the Court in the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq, has disseminated over 500,000 copies of the Notice by first class mail to potential Class Members, beginning on November 28, 2008.  *See* Waugh Decl. at ¶9.  In addition, Epiq caused the Summary Notice to be published in the *Wall Street Journal* and over the PR Newswire on December 12, 2008, and created and went online with the Settlements website (www.brocadeclasssettlement.com) and the telephone response system.  *Id.* at ¶¶11-17.

The Notice stated that any objections to the Settlements must be received by January 9, 2009, and that any requests for exclusion must be postmarked by January 9, 2009.  As of the filing of this Motion, only four potential Class Members had filed complete and timely requests for exclusion.  *Id.* at ¶19.  Further, not a single Class Member has objected to the Settlements.  *Id.* at ¶20.  The Class's overwhelmingly positive response confirms: (i) the sufficiency of the Notice; (ii) that the Settlements are fair, reasonable and adequate and in the best interest of the Class; and (iii) that the Plan of Allocation is fair and reasonable.

As demonstrated by the arguments set forth below, as well as those set forth in the Angelovich Declaration, the Stone Declaration, the Weber Declaration, and the Phillips and Renfrew Declaration, approval of the Settlements and Plan of Allocation are entirely appropriate.  Accordingly, Class Representatives respectfully request that the Court, after conducting the Fairness Hearing, enter an order: (i) approving the Settlements as fair, reasonable, and adequate and in the best interest of the Class; (ii) approving the Plan of Allocation as fair and reasonable; (iii) ordering the consummation of the Settlements subject to their terms; and (iv) granting such other and further relief to which the Court believes Class Representatives are entitled.

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

6

## II.      BACKGROUND OF THE ACTON

The factual and procedural background of this case is well known to the Court.  As such, Class Representatives will not recite the background of this litigation again.  Instead, Class Representatives respectfully refer the Court to the pleadings on file, including the Angelovich Declaration, which explains the full factual and procedural history of this litigation. [8]

In short, this litigation, which began in May 2005, involves allegations that Defendants Brocade, Greg Reyes, Antonio Canova, Larry Sonsini, Seth Neiman, Neal Dempsey, and Brocade's former outside auditor, KPMG, violated the federal securities laws by engaging in a long-running fraudulent scheme whereby Defendants failed to disclose that they intentionally manipulated stock option grant dates in order to provide the Company's officers, directors and employees with more favorable option exercise prices with the benefit of hindsight.  As a result of this scheme, every single financial statement issued by Brocade for fiscal years 2000 through 2004 was materially false and misleading when made, and as a result, Brocade was forced to restate its financial statements for those years.

---

[8] Class Representatives and Class Counsel are simultaneously submitting the Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Class Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses (the "Fee Motion"), as well as the Declaration of Jeffrey J. Angelovich in Support of Proposed Class Action Settlement and Application For an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Angelovich Declaration"). The Angelovich Declaration describes, *inter alia*, the history of the Action from filing through the submission of the Settlements to the Court; the nature of the claims asserted in the Action; the motion practice and discovery undertaken in the Action; the negotiations leading to the Settlements; the value of the Settlements to the Class, as compared to the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation for the settlement proceeds and the factors upon which that Plan is based. The Fee Motion discusses, *inter alia*, the legal standards in this Circuit for approval of a request for attorneys' fees and reimbursement of expenses, and the fairness of the request for fees and reimbursement of expenses.  Rather than repeating the matters set forth in the Angelovich Declaration and the Fee Motion, Class Representatives respectfully incorporate those documents herein.

III.    **THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT**

A.      **The Ninth Circuit Favors Class Action Settlements**

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Service Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "unless [a] settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  This is especially true of class actions, and particularly securities class actions "because of their typical complexity."  *In re Heritage Bond Litig.*, MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *23 (C.D. Cal. June 10, 2005).

A strong initial presumption of fairness attaches to a proposed class action settlement if the settlement is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel where they have conducted sufficient investigation and discovery to permit the court to "act intelligently."  *Id*. at *11.  The initial presumption of fairness clearly applies to the Settlements because, as discussed in detail below, they were reached by experienced, fully-informed counsel after many years of litigation, after months of continuous negotiations between experienced counsel and sophisticated parties, and with the assistance of experienced, well-respected mediators.  *See* Phillips & Renfrew Decl. at ¶¶4-16 & 20-33; Stone Decl. at ¶¶2-12; Weber Decl. at ¶¶5-11; *see also In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *21-22; MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.43 (1995); Newberg & Conte, NEWBERG ON CLASS ACTIONS 11.42 (3d ed. 1992).

B.      **Judge Phillips and Judge Renfrew Believe That the Settlements Are Fair, Reasonable and Adequate**

The two mediators in this case, both retired federal judges, jointly filed a declaration detailing their role in this case and stating their opinion that the Settlements are fair, reasonable and adequate and in the best interests of all parties.  Phillips & Renfrew Decl. at ¶¶28-33.  Specifically, Judges Phillips and Renfrew believe that Class Representatives could not have obtained a better

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

8

1   settlement for the Class without going to trial and, even then, would have faced substantial risks that

2   a jury would award far less, if anything at all. *Id*. at ¶31. Judges Phillips and Renfrew reached this

3   conclusion only after thoroughly reviewing the damages reports submitted by both sides, listening to

4   oral presentations given by counsel for both sides, and reviewing statements from experts for both

5   sides. *Id*. Thus, Judge Phillips and Judge Renfrew are keenly aware of the parties' litigation efforts,

6   respective arguments in favor of and/or against their respective liability and damages theories, and

7   their respective positions regarding the settlement value of this case. *Id*. at ¶¶4-16 & 20-38. The

8   involvement, support, and opinions of these two highly respected and experienced mediators should

9   be afforded considerable weight in support of final approval of the Settlements. *See, e.g., Jaffe v.*

10  *Morgan Stanley & Co*., No. C-06-3903, 2008 U.S. Dist. LEXIS 12208, at *24-25 (N.D. Cal. Feb. 7,

11  2008) ("The involvement of an experienced mediator in the settlement process…confirm[s] that the

12  settlement was not collusive.").

13      **C.   Class Representatives—Who Were Directly Involved In the Litigation and
           Settlement Process—Approve of and Support the Settlements**

14

15          Two highly sophisticated institutional investors, Class Representatives APERS and ERIE,

16  represented the Class in this case. APERS and ERIE filed declarations in support of the Settlements.

17  *See* Stone Decl. at ¶¶1-12; Weber Decl. at ¶¶1-11. Gail Stone, the Executive Director of APERS,

18  and Sue Weber, the Executive Secretary of ERIE, were heavily involved in each aspect of this

19  litigation, from planning litigation strategy and reviewing briefs and other pleadings prior to their

20  filing to directly overseeing the settlement negotiation process. Stone Decl. at ¶¶1-9; Weber Decl. at

21  ¶¶1-6. As is apparent from their declarations, APERS and ERIE directly monitored and controlled

22  the litigation process. *Id*. Based upon their direct involvement in this litigation and the settlement

23  process, Class Representatives have a complete understanding of the time, effort, risk and expense

24  expended by Class Counsel and also the strengths and weaknesses of the Class' claims against

25  Defendants, including the hurdles the Class would be required to overcome in order to win at trial.

26  *Id*. Based upon their understanding of these matters as well as all of the facts and circumstances at

27  issue here, Class Representatives approved the Settlements and believe that the Settlements represent

28  CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

9

a substantial recovery for the Class.  Stone Decl. at ¶9; Weber Decl. at ¶7.  Class Representatives' strong support of the Settlements militates heavily in favor of final approval.  *See DIRECTV, Inc.*, 221 F.R.D. at 528 ("[T]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class.") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.44 (1995)).

### D.    The Ninth Circuit's Standards for Final Approval of a Class Action Settlement

The standard for approval of a class action settlement in the Ninth Circuit tracks that of Federal Rule of Civil Procedure 23(e):  whether the proposed settlement is "fair, reasonable, and adequate."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); FED. R. CIV. P. 23(e).  In determining whether a proposed class action settlement meets this "universally applied standard," the Ninth Circuit considers eight factors:

> (1) The strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Each factor must be evaluated by looking to the "nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice*, 688 F.2d at 625.  Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *DIRECTV, Inc.*, 221 F.R.D. at 525-26.  Furthermore, "district courts have wide discretion in assessing the weight and applicability of each factor."  *DIRECTV, Inc.*, 221 F.R.D. at 526; 5 MOORE'S FEDERAL PRACTICE, § 23.85[2][a] (Matthew Bender 3d ed.).  Ultimately, the district court's determination is nothing more than "an amalgam of delicate balancing, gross approximations and rough justice."  *DIRECTV, Inc.*, 221 F.R.D. at 526 (quoting *City of Detroit v. Grinnell Corp.*,

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

10

495 F.2d 448, 468 (2d Cir. 1974)).

As demonstrated below, an analysis of each of the factors set forth above strongly supports a finding that the Settlements are fair, reasonable and adequate, and are in the best interest of the Class.

**E. The Settlements Satisfy the Ninth Circuit's Standards for Final Approval of a Class Action Settlement**

**1. The Strength of Class Representatives' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation Supports the Settlements**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." 5 MOORE'S FEDERAL PRACTICE, § 23.85[2][b]; *DIRECTV, Inc.*, 221 F.R.D. at 526. However, in balancing, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." 5 MOORE'S FEDERAL PRACTICE, § 23.85[2][b]; *DIRECTV, Inc.*, 221 F.R.D. at 526. As noted by the Ninth Circuit:

> The settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the Court of Appeals] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.

*Officers for Justice*, 688 F.2d at 625.

The Court must also consider the risk, expense, complexity and likely duration of further litigation. *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV, Inc.*, 221 F.R.D. at 526. As one court has observed:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Id.* (internal citations omitted).

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

1      Here, while Class Representatives fully believe in the strength of their case and that they

2   could prevail at trial, they also recognize that continued litigation poses substantial risks and that

3   success at trial is not certain.   Before reaching the Settlements, Class Representatives fully

4   investigated and evaluated the claims asserted in order to assess the strengths and weaknesses of the

5   case.  For example, Class Representatives' investigation included numerous in-depth interviews with

6   a wide variety of former Brocade employees and other witnesses with knowledge of the subject

7   matter of the case.  Angelovich Decl. at ¶29.  Among other things, Class Counsel reviewed publicly

8   available documents, including Brocade's options grants and securities prices, as well as its SEC

9   filings and public statements.  *Id*.  Class Counsel also worked closely with expert consultants in

10  order to assess Brocade's compliance with the accounting rules at issue and to identify the potential

11  range of damages in the case.  *Id*. at ¶¶70-73.  Furthermore, Class Counsel obtained and reviewed

12  millions of pages of documents from Defendants and relevant third parties and also reviewed the

13  transcripts from Defendant Reyes' criminal trial and the deposition testimony taken in the SEC's

14  action against Defendant Reyes.  *Id*. at ¶¶7, 17 & 28.  As a result of these endeavors, among others,

15  Class Representatives obtained a comprehensive understanding of the strengths and weaknesses of

16  their case and had sufficient information to make an informed decision regarding the fairness,

17  reasonableness and adequacy of the Settlements before entering into and presenting the Settlements

18  to the Court.

19      With this information in hand, Class Representatives believed, and continue to believe, that

20  there was and is substantial evidence of wrongdoing by Defendants.   However, Class

21  Representatives, along with Judge Phillips and Judge Renfrew, acknowledge the risks, expense,

22  complexity and likely duration of continued litigation.  *See* Phillips & Renfew Decl. at ¶¶28-31.

23  Indeed, Judges Phillips and Renfrew had the opportunity to review substantial evidence from both

24  sides including the damages reports and statements by experts on both sides and also listening to the

25  arguments of counsel for both sides at multiple formal mediation sessions.  *Id*.  After reviewing a

26  substantial amount of evidence and hearing arguments from both sides, these retired judges reached

27

28  CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

1   the conclusion that the Class could not have obtained a better result than the Settlements short of

2   going to trial, and even then, would face substantial risks. *Id.*

3          Indeed, the Class faced formidable defenses to loss causation and damages, many of which

4   were raised by Defendants in their motions to dismiss, oppositions to class certification, and

5   throughout the settlement negotiations. *Id.* While none of Defendants' arguments prevailed at the

6   motion to dismiss or class certification stages, Defendants intended to pursue certain of these

7   defenses at summary judgment and trial. *Id.* Specifically, with respect to the issue of loss causation,

8   Defendants filed a motion for partial summary judgment, which remained undecided at the time the

9   Settlements were reached. In order to prevail on this issue, Class Representatives would be required

10  to prove that Defendants' false and misleading statements inflated the price of Brocade's common

11  stock, and the amount of the artificial inflation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

12  Defendants' arguments in their motion for partial summary judgment, if ultimately accepted by a

13  jury, possibly could have undermined Class Representatives' ability to prove loss causation for

14  purposes of their Section 10(b) claim, or seriously limited the universe of damages to a verdict well

15  below the amount of the Settlements. While Class Representatives were confident they would

16  prevail on this issue, they recognized that in this expert-intensive area of the law, a jury could be

17  swayed by Defendants' experts. Even assuming Class Representatives survived the motion for

18  partial summary judgment, the risks of any trial—and particularly those present in a complex

19  securities class action such as this—cannot be underestimated.

20          Therefore, careful consideration of the strengths and weaknesses of Class Representatives'

21  case balanced against the above risks support approval of the Settlements.

22

23

24

25

26

27

28  CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
    (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
    3:05-CV-02042-CRB

2.      **The Risk of Maintaining Class Action Status Throughout the Trial Supports the Settlements**

On October 12, 2007, this Court granted Class Representatives' motion for class certification as to Defendants Brocade, Reyes, Canova, Sonsini, Neiman and Dempsey.[9]  However, pursuant to Federal Rule of Civil Procedure 23, the Court may revisit its grant of certification at any time before final judgment. FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  Given the complexity of this class action litigation, Defendants could potentially argue that facts exist justifying decertification.[10]

More importantly, Class Representatives faced the likely possibility that they could take this case to trial, win, and then lose an appeal based on the issue of class certification.  The issue of certification was heavily briefed and hotly contested.  Although Class Representatives fully believe any appeal of the certification order would be frivolous, the fact remains that an appeal would be likely absent settlement.

This factor weighs in favor of approving the Settlements.

3.      **The Amount of the Recovery Supports the Settlements**

In determining whether the amount of a proposed settlement is fair, the Ninth Circuit has suggested that the district court compare the settlement amount to the parties' "estimates of the maximum amount of damages recoverable in a successful litigation." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *13 (N.D. Cal. Jan. 26, 2007).  However, the settlement amount is not to be judged against a *speculative* or *hypothetical* measure of what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  Moreover, the adequacy of a settlement amount must be judged as "a yielding of absolutes and an abandoning of highest

---

[9] Class Representatives reached a settlement with KPMG prior to filing their motion for class certification.

[10] However, the possible risk of decertification does not prevent the Court from granting final approval of the Settlements. *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *35-37.

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

14

1   hopes…Naturally, the agreement reached normally embodies a compromise; in exchange for the

2   saving of cost and elimination of risk, the parties each give up something they might have won had

3   they proceeded with litigation…" *Officers for Justice*, 688 F.2d at 624 (internal citations omitted).

4        Here, the amount of the Settlements constitutes a remarkable recovery for the Class.  At the

5   time Class Representatives agreed to settle the Class's claims against the Settling Defendants, the

6   $160,098,500.00 obtained was the largest settlement ever recovered in an "options backdating" case

7   (and currently remains the second largest).  *See* Angelovich Decl. at ¶5.  And, in terms of total

8   dollars recovered in any type of securities fraud class action, the Settlements rank as the fourth

9   largest ever in the Ninth Circuit.  *Id.*

10       Perhaps more importantly, the amount obtained constitutes an unprecedented recovery in

11  terms of the percentage of the Class' overall damages.  *Id.*  Depending on the damage model

12  ultimately accepted by the Court and jury at trial, this recovery represents 60% to 100% of the total

13  damages the Class could have proved at trial (60-70% under Class Representatives' damages theory

14  and 80-100% under Defendants' damages theory).  *Id.*  These percentages are considerably higher

15  than those typically accepted by courts in this circuit.  *See, e.g., Glass*, 2007 U.S. Dist. LEXIS 8476,

16  at *13 (finding a settlement based on a percentage of 25 to 35% of the amount of damages plaintiffs

17  could have hoped to prove at trial "reasonable in light of the uncertainties involved in the

18  litigation."); *In re Mego*, 213 F.3d at 459 (finding a settlement that represented roughly 17% of the

19  potential recovery fair and adequate). In addition, the Court should consider that the Settlements

20  provide for a recovery to the Class <u>now</u>, rather than a speculative payment many years down the

21  road.  *See In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *28.

22       The conclusion that the amount of the Settlements supports final approval is further bolstered

23  by the fact that the Settlements were the result of intense, hard fought, arm's-length negotiations.

24  *See* Phillips & Renfrew Decl. at ¶¶28-38.  Class Representatives and Brocade engaged in settlement

25  negotiations for more than a year and a half.  *Id.*  Judge Phillips and Judge Renfrew conducted these

26  settlement negotiations.  Judge Phillips and/or Judge Renfrew personally supervised all settlement

27  negotiations between Class Representatives and Brocade, and also presided over and ruled upon

28  CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

1   disputes regarding the terms of the settlement documents.  *Id.* at ¶¶4-16 & 20-38.  Class

2   Representatives separately engaged in extensive arm's-length negotiations with Defendant KPMG

3   and achieved a recovery after the Court granted KPMG's motion to dismiss and despite the fact that

4   the DOJ alleged—and a jury found—that KPMG was a victim of Defendant Reyes' fraudulent

5   conduct.  *See* Angelovich Decl. at ¶4.  Without doubt, the Settlements resulted from arm's-length

6   negotiations.

7        Therefore, considering the fact that the amount of the Settlements represents a large

8   percentage of the total damages, the time value of money, the probability of lengthy litigation in the

9   absence of a settlement, and the risks that the Class would not have been able to succeed at trial, or

10   that a jury would award damages in an amount lower than the Settlements, Class Representatives

11   respectfully submit that this Court should find that this factor weighs heavily in favor of the

12   Settlements.

13        **4.   The Extent of Discovery Completed and the Stage of the Proceedings
           Support the Settlements**

14

15        "The extent of discovery may be relevant in determining the adequacy of the parties'

16   knowledge of the case."  *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting MANUAL FOR COMPLEX

17   LITIGATION, (THIRD) § 30.42 (1995)).  "A court is more likely to approve a settlement if most of the

     discovery is completed because it suggests that the parties arrived at a compromise based on a full
18
     understanding of the legal and factual issues surrounding the case."  *Id.* (quoting 5 MOORE'S
19
     FEDERAL PRACTICE, § 23.85[2][e] (3d ed.)).  A settlement following sufficient discovery and
20
     genuine arm's-length negotiations is presumed fair.  *Id.* at 528.  However, "in the context of class
21
     action settlements, formal discovery is not a necessary ticket to the bargaining table where the
22
     parties have sufficient information to make an informed decision about settlement."  *In re Mego*, 213
23
     F.3d at 459 (internal citations and quotations omitted).
24
          Here, the extent of discovery conducted and the stage of the litigation are both indicators of
25
     Class Counsel's familiarity with the case and that Class Representatives have more than ample
26
     information to make informed decisions regarding settlement.  To date, Class Counsel have engaged
27

28   CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
     (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
     3:05-CV-02042-CRB

1   in substantive review of millions of pages of documents produced by Defendants, issued numerous

2   third-party subpoenas and reviewed thousands of pages of documents produced in response, and

3   reviewed thousands of pages of deposition testimony and trial testimony conducted in the parallel

4   SEC and criminal proceedings.  *See* Angelovich Decl. at ¶¶7, 17 & 28.  In addition to discovery,

5   Class Counsel have successfully briefed and argued numerous substantive motions, including a

6   motion for class certification and two motions for partial summary judgment.  *Id*. at ¶¶7, 23, 25, 27

7   & 29.   Furthermore, Class Counsel participated in numerous rounds of formal and informal

8   mediation sessions.  *Id*. at ¶¶7, 19, 26, 29 & 30.  Moreover, representatives from Class Counsel

9   attended jury selection and parts of Defendant Reyes' criminal trial.  *Id*. at ¶28.

10         As a result, the proposed Settlements were reached only after the parties had exhaustively

11  examined and were thoroughly familiar with the factual and legal bases of the disputed claims.

12  Accordingly, this factor strongly militates in favor of approval of the Settlements.

13                    **5.        The Experience and Views of Counsel Supports the Settlements**

14         "The recommendation of plaintiffs' counsel should be given a presumption of

15  reasonableness."  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007); *Boyd

16  v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Indeed, "[g]reat weight is accorded to the

17  recommendation of counsel, who are most closely acquainted with the facts of the underlying

18  litigation."  *DIRECTV, Inc.*, 221 F.R.D. at 528 (citation omitted).   This is because "parties

19  represented by competent counsel are better positioned than courts to produce a settlement that fairly

20  reflects each party's expected outcome in the litigation."  *Id*.  Thus, "the trial judge, absent fraud,

21  collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Id*.

22         This action has been litigated and settled by experienced and competent counsel on both

23  sides of the case.  The multitude, experience and financial well-being of the firms representing the

24  Defendants in this case should not be overlooked.  Indeed, Defendants were separately represented

25  by the following well-established defense firms:  Wilson Sonsini Goodrich & Rosati; Cooley

26  Godward & Kronish; Skadden Arps Slate Meagher & Flom; Heller Ehrman, Wilmer Cutler Pickering

27  Hale & Dorr; Kirkpatrick & Lockhart Preston Gates Ellis; Cravath Swaine & Moore; Taylor & Co.

28

Law Offices, Inc.; Dewey & LeBoeuf; Bouchard Margules & Friedlande; and Orrick, Herrington & Sutcliffe. These firms devoted significant numbers of attorneys and staff to work not only in this litigation, but also in the parallel state and federal proceedings. The fact that each of these firms endorses the Settlements supports final approval.

The Class also was well-represented in this litigation. Class Counsel is comprised of two accomplished law firms who are well known for their experience and success in complex and class action litigation. Class Counsel diligently litigated this action on a contingent basis for over three years, undertaking substantial risks, including the risks of surviving dispositve motions, proving liability and damages, prevailing in the "battle of the experts," winning at trial, and surviving post-trial motions and appeals, not to mention the risk of expending thousands of hours of work, with no guarantee of ever being compensated for the investment of time and money the case would require. In undertaking that responsibility, Class Counsel became extremely knowledgeable of the facts underlying the allegations in this action and the legal arguments that have and could be made both in support of and in defense of Class Representatives' claims. Accordingly, Class Counsel did not enter into the Settlements hastily or without adequate information to make an educated decision. Moreover, the Settlements were reached through the substantial assistance of two experienced mediators, former federal judges Layn Phillips and Charles Renfrew. *See* Phillips & Renfrew Decl. at ¶¶1-38.

That such qualified and well-informed counsel and mediators endorse the Settlements as fair, reasonable and adequate heavily favors this Court's approval of the Settlements.

### 6. The Presence of a Governmental Participant

No governmental agency was or is a party to this action, nor did a governmental entity participate in the settlement of this action. However, as the Court is well aware, the SEC and DOJ conducted independent investigations and initiated actions based upon the same conduct at issue in this litigation. Thus, while not directly involved in this litigation, two governmental agencies investigated and are litigating claims similar to those asserted by Class Representatives which, to

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION 3:05-CV-02042-CRB

18

date, have resulted in two criminal convictions.  This factor weighs in favor of final approval of the Settlements.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) ("The participation of a government agency serves to protect the interests of the class members.").

### 7.    The Overwhelmingly Positive Reaction of Class Members Supports the Settlements

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court."  *DIRECTV, Inc.*, 221 F.R.D. at 528 (quoting 5 MOORE'S FEDERAL PRACTICE, § 23.85[2][d]).  Furthermore, it is well established that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Id*. at 529.

As directed by the Court in the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq, has disseminated over 500,000 copies of the Notice by first class mail to potential Class Members beginning on November 28, 2008.[11]  *See* Waugh Decl. at ¶9.  Just as the Court ordered, the Notice contained a detailed narrative of the background of this action and the terms of the proposed Settlements.  *Id*. at Exhibit 1.  The Notice also included copies of the actual settlement documents and provided potential Class Members with clear and prominent instructions about how to object to the proposed Settlements and how to request exclusion from the Class.  *Id*. The Notice stated that any objections to the Settlements must be received by January 9, 2009, and that any requests for exclusion must be postmarked by January 9, 2009.  The Class has been virtually silent:  only four potential Class Members filed a complete and timely request for exclusion and <u>not a single Class Member objected to the Settlements</u>.  *Id*. at ¶¶19-20.  The complete absence of Class Member objections to the proposed Settlements "speaks volumes with respect to the overwhelming

---

[11]  In addition, a Summary Notice was published in the *Wall Street Journal* and over the PR Newswire on December 12, 2008, a Settlements website was created (www.brocadeclasssettlement.com), and a telephone response system was established to provide additional notice and assistance to potential Class Members.  *See* Waugh Decl. at ¶¶11-17.

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION 3:05-CV-02042-CRB

19

1   degree of support" for the proposed Settlements among Class Members. *DIRECTV, Inc.*, 221 F.R.D.

2   at 529.

3         Indeed, by any standard, the lack of objections by potential Class Members favors approval

4   of the Settlements.  *See, e.g., Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004)

5   (affirming settlement with 45 objections out of 90,000 notices sent); *Rodriguez v. West Publ. Corp.*,

6   No. CV05-3222, 2007 U.S. Dist. LEXIS 74767, at *33 (C.D. Cal. Sept. 10, 2007) (granting final

7   approval to settlement with 54 objections out of 376,000 notices).  The "unanimous, positive

8   reaction" to the proposed Settlements is "compelling evidence" that the proposed Settlements are

9   fair, reasonable and adequate and should be granted final approval.  *DIRECTV, Inc.*, 221 F.R.D. at

10  529.

11  **IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

12        Finally, Class Representatives seek the Court's approval of the Plan of Allocation set forth in

13  the Notice as Exhibit A (the "Plan").  The Plan will govern the distribution of the Settlement

14  proceeds after deducting all appropriate taxes, approved administrative costs, attorneys' fees, and

15  reimbursement of litigation expenses (the "Net Settlement Fund").  The Net Settlement Fund will be

16  distributed to Class Members who are not otherwise excluded and who timely submit valid Proof of

17  Claim forms to the Claims Administrator ("Authorized Claimants").  Each Authorized Claimant

18  shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each

19  authorized claim bears to the total of all authorized claims as explained in the proposed Plan.  The

20  Plan is designed to achieve an equitable and rational distribution of the Net Settlement Fund among

21  eligible Class Members.

22        The Court has broad discretion in approving the Plan.  *See Class Plaintiffs v. Seattle*, 955

23  F.2d 1268, 1284 (9th Cir. 1992); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *37.

24  Approval of a plan of allocation of settlement proceeds in a class action under Federal Rule of Civil

25  Procedure 23 is governed by the same standards of review applicable to approval of the settlement as

26  a whole:  the plan must be fair and reasonable.  *See Class Plaintiffs*, 955 F.2d at 1284-85; *In re*

27  *Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *37; *see also In re Oracle Sec. Litig.*, No. C-

28  CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

20

1    90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994).  However, "[a]n

2    allocation formula need only have a reasonable, rational basis, particularly if recommended by

3    experienced and competent counsel." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at

4    *38.

5           Generally, "[a] plan of allocation that reimburses class members based on the extent of their

6    injuries" is "reasonable." *Id.*; *see also Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS 21593, at *3.

7    However, it is also reasonable to "allocate more of the settlement to class members with stronger

8    claims on the merits." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *38; *see also*

9    *Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS 21593, at *3.

10          Here, Class Counsel believes that the Plan sets forth a fair and reasonable method to

11   equitably distribute the Net Settlement Fund among Class Members.  *See* Angelovich Decl. at ¶¶39-

12   40.  The Plan reflects, in a simple and straightforward manner, Class Representatives' damages

13   theory of the case based upon their extensive investigation and the discovery process.  Indeed, Class

14   Counsel worked closely with a well-regarded damages expert in developing the Plan.  *Id*. at ¶40.

15   However, the Plan is not a formalized damage study.  The Plan is a simplified methodology designed

16   solely to compare one Class Member to another using their respective sales.  Differences in

17   treatment of Class Members are made solely with respect to the timing of Class Members'

18   transactions.  The Plan was fully disclosed and explained in the Notice and importantly, not a single

19   Class Member objected to the proposed Plan.  Therefore, Class Representatives submit that the Plan

20   of Allocation is fair and reasonable and should be approved.

21   **V.      CONCLUSION**

22          For all of the foregoing reasons, Class Representatives respectfully request that the Court (i)

23   approve the Settlements as fair, reasonable, and adequate and in the best interest of the Class; (ii)

24   approve the Plan of Allocation as fair and reasonable; (iii) order the consummation of the

25   Settlements subject to their terms; and (iv) grant such other and further relief to which the Court

26   believes Class Representatives and Class Counsel are entitled.

27

28

1    DATED:  January 15, 2009                    Respectfully submitted,

2                                                NIX, PATTERSON & ROACH, L.L.P.

3
                                    By:    _____/s/_____
4                                          Brad Beckworth

5                                          Jeffrey J. Angelovich (*admitted Pro Hac Vice*)
                                           Bradley E. Beckworth (*admitted Pro Hac Vice*)
6                                          Susan Whatley (*admitted Pro Hac Vice*)
                                           NIX, PATTERSON & ROACH, L.L.P.
7                                          205 Linda Drive
                                           Daingerfield, Texas 75638
8                                          Telephone:  903-645-7333
                                           Facsimile:  903-645-4415
9                                          jangelovich@ nixlawfirm.com
                                           bbeckworth@nixlawfirm.com
10                                         susanwhatley@ nixlawfirm.com

11                                         **Class Counsel**

12
                                           Sean F. Rommel (*admitted Pro Hac Vice*)
13                                         PATTON, ROBERTS, PLLC
                                           Century Bank Plaza
14                                         2900 St. Michael Drive, Suite 400
                                           Texarkana, TX 75505-6128
15                                         Telephone:  903-334-7000
                                           Facsimile:  903-330-7007
16                                         srommel@pattonroberts.com

17                                         **Class Counsel**

18                                         Matt C. Keil
                                           John W. Goodson
19                                         KEIL & GOODSON, PA
                                           611 Pecan Street
20                                         Texarkana, AR 71854
                                           Telephone: 870-772-4113
21                                         Facsimile: 870-773-2967

22                                         **Additional Counsel for APERS**

23

24

25

26

27

28    CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
      (1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
      3:05-CV-02042-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sean M. Handler
John A. Kehoe
BARROWAY TOPAZ KESSLER MELTZER
& CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile: 610-667-7056
shander@sbtklaw.com
jkehoe@sbtklaw.com

**Additional Counsel for ERIE**


Laurence D. King (State Bar No. 206423)
Linda M. Fong (State Bar No. 124232)
KAPLAN FOX & KILSHEIMER LLP
555 Montgomery Street, Suite 1501
San Francisco, CA 94111
Telephone:  415-772-4700
Facsimile:   415-772-4707
LKing@KaplanFox.com
LFong@KaplanFox.com

**Liaison Counsel**

CLASS REPRESENTATIVES' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES FOR
(1) FINAL APPROVAL OF THE SETTLEMENTS AND (2) FINAL APPROVAL OF THE PROPOSED PLAN OF ALLOCATION
3:05-CV-02042-CRB

23